IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

MIKHAIL DAVITASHVILI                                                                    PLAINTIFF

V.                                                        CIVIL ACTION NO.2:08CV190-NBB-JAD

R. ADAMS, et al.                                                                       DEFENDANTS

## REPORT AND RECOMMENDATION

The defendant Dr. Whitman Johnson has moved for summary judgment (Doc. 56). The plaintiff filed a response to the motion, but claimed he had not received the motion for summary judgment. Because he failed to articulate any specific discovery needed in order to respond to the motion for continuance, the plaintiff's motion to continue the summary judgment was denied. The undersigned ordered the defendant to re-serve his motion and granted the plaintiff time to file an additional response. The defendant filed replies to each of the plaintiff's responses.

## SUMMARY JUDGMENT STANDARDS

Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). Rule 56(e) Fed.R.Civ.P. requires that materials supporting or opposing the motion be admissible at trial. Material that would be inadmissible cannot be considered on a motion for summary judgment since it would not establish a genuine issue of material fact.

Summary judgment is proper "where a party fails to establish the existence of an element essential to his case and on which he bears the burden of proof. A complete failure of proof on an essential element renders all other facts immaterial because there is no longer a genuine issue of material fact." *Washington v. Armstrong World Indus*., 839 F.2d 1121, 1122 (5th Cir.1988) (citing

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265(1986)). If the party with the burden of proof cannot produce any summary judgment evidence on an essential element of his claim, summary judgment is required. *Geiserman v. MacDonald,* 893 F.2d 787, 793(5th Cir. 1990).

The moving party must make an initial showing that there is no dispute of material fact or that there is a failure of proof of an element of the claim. If this showing is made, the nonmoving party must go beyond pleadings and submit specific evidence showing that there are one or more genuine issues of fact to be resolved by trial. In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(emphasis omitted). While all facts are considered in favor of the nonmoving party, including all reasonable inferences therefrom, *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995), the nonmovant's burden, " is not satisfied with 'some metaphysical doubt as to the material facts,'" *Matsushita,* 475 U.S. at 586, 106 S. Ct. at 1356, by 'conclusory allegations,' *Lujan,* 497 U.S. at 871-73, 110 S.Ct. at 3180, by "unsubstantiated assertions," *Hopper v. Frank,* 16 F.3d 92 (5th Cir.1994), or by only a "scintilla" of evidence, *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082 (5th Cir. 1994). *Little v. Liquid Air Corp.* at 1075.[1] A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d. 202(1986). Summary judgment is appropriate if "critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the

---

[1] Quoting from *Matsushita Electric Indus.Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed. 2d 538(1986) and *Lujan v. National Wildlife Federation*, 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695(1990).

nonmovant." *Armstrong v. City of Dallas*, 997 F.2d 62 (5th Cir. 1993). If the nonmoving party fails to meet this burden, the motion for summary judgment must be granted.

These standards have been applied in evaluating the evidence of record in support of and opposition to the motion for summary judgment.

## ANALYSIS

Davitashvili may not be deprived of needed medical care because of the Eighth Amendment's prohibition against cruel and unusual punishment. While the state has "an obligation to provide medical care for those whom it is punishing by incarceration," *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 290, 50 L.Ed. 2d. 251, 259 (1976), it is not liable for simple carelessness, inadvertent failure to provide appropriate medical care, nor even a deliberate failure to conform to a standard suggested by experts. *Id.* at 105-109, 97 S Ct. at 291-292. Prisoners may recover only for violation of their constitutional rights. "The Constitution does not command that inmates be given the kind of medical attention that judges would wish to have for themselves, nor the therapy that Medicare and Medicaid provides for the aged or the needy." *Barksdale v. King*, 699 F.2d 744, 748 (5th Cir. 1983). The Constitution only prohibits "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106, 97 S. Ct. at 292. Only this level of indifference can amount to "unnecessary and wanton infliction of pain." *Id.* at 105, 97 S. Ct. at 291, (quoting *Gregg v. Georgia*, 428 U.S. 153, 182-183, 96 S. Ct. 2909, 2925, 49 L.Ed. 2d 859 (1976)). "It is only such indifference that can offend 'the evolving standards of decency' in violation of the Eighth Amendment." *Estelle,* 429 U.S. at 106, 97 S.Ct. at 292.

Additionally Johnson bears no vicarious liability in § 1983 actions for the conduct of others, whether they be his supervisors, co-workers or subject to his supervision. *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed. 611(1978). There must be factual allegations of acts or omissions regarding Johnson's conduct sufficient to allow an inference that he acted with deliberate indifference to Davitashvili's serious medical needs.

Davitashvili's complaint and amended complaint assert that Johnson, following a use-of-force incident on May 29, 2008, failed to diagnose plaintiff's "serious injury" and take a "correct approach." Johnson allegedly "failed to examine" Davitashvili and instead administered pills to the plaintiff which he alleges "got no effect on his pain." He claims his condition was worsened as a result of Johnson's care. He complains that Johnson referred him to specialists but that the appointments were delayed 60 to 90 days. These specialists diagnosed his condition which required supposedly "intensive treatment." He claims that he has numbness in his left hand, pain in his left ear, and "massive head," which is assumed to be a complaint about headaches. Plaintiff later in the complaint asserts that Johnson's actions and omissions amount to deliberate indifference to his serious medical needs. He does not allege that Johnson refused to treat him or deliberately mistreated him. His allegations, with the benefit of liberal construction, might be sufficient to state a claim for medical negligence, but Davistashvili cannot succeed in this action on claims of neglect, but only upon a showing of deliberate indifference. The pleadings show no more than the plaintiff's disagreement with the course of treatment chosen by the doctor. He also asserts that Johnson's care was the cause of assorted medical conditions and the cause of a worsening of injuries. His conclusory allegation of deliberate indifference, coupled with his vague allegations criticizing and disagreeing with the care provided by Johnson is not adequate to state a claim or cause of action for

4

violation of his constitutional rights. *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998); *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992); *Sisk v. Levings*, 868 F.2d 159, 161 (5th Cir. 1989) (citing *Elliott v. Perez*, 751 F.2d 1472, 1479 (5th Cir. 1985)); *Brinkmann v. Johnston*, 793 F.2d 111 (5th Cir. 1986).

The plaintiff has also failed to produce proof on summary judgment sufficient to make out his prima facie case. The defendant is entitled to judgment as a matter of law. Davitashvili's initial response to the motion for summary judgment is nothing but conclusory statements, aside from attached portions of his medical records. Because it was obvious that these were incomplete selections from the medical records, the undersigned ordered Johnson to provide an authenticated copy of Davitashvili's medical records. These records were obtained through the prison and submitted to the undersigned. The complaint alleges that Dr. Johnson failed to diagnose and treat "a serious disease." Davitashvili's initial response alleges Johnson's purported failure to diagnose multi-level degenerative disc disease, a condition curiously not diagnosed by anyone at the time of the filing of the original or amended complaint. The original response also repeatedly states that the "evidence will show," the merits of various aspects of his claim, but does not offer any evidence to support his claims aside from his edited medical records. The supplemental response is dedicated to complaining about the court's order denying discovery, but still fails to point out any specific need for discovery .

The full medical records show that Davitashvili's excerpts omitted so much of the care provided by Johnson, other doctors and health care providers as to amount to a misrepresentation of the care provided. A review of the full records shows that Davitashvili was seen repeatedly by nurses, nurse practitioners, physicians on staff and off-site specialists after the use of force incident

for differing, shifting symptoms and conditions. He was evaluated by a nurse, defendant Dorothy Strong, immediately after the use of force incident. Davitashvili included one page from the evaluation which said he was found on the floor, but omitted the other two pages documenting the evaluation and treatment after the incident. These pages show he was checked and found to have no lacerations, contusions or bruises. The check list of items/systems to be checked include respiratory, cardiovascular, psychiatric and neurological. Blood oxygenation levels were checked with a pulse oximeter and he was cleared to be taken to segregation. Nurse Strong, like Johnson, is accused of deliberate indifference to Davitashvili's serious medical needs. The pleadings and the medical records taken together show nothing more that Davitashvili's dissatisfaction with Strong's decision opting for evaluation and decontamination rather than having him seen by a physician, in house or at an emergency room. The records do not provide a scintilla of evidence to support a claim of deliberate indifference on the nurse's part, nor of any ill effect flowing from the selected treatment.

The records show that Davitashvili was seen numerous times by medical personnel from the time of the use of force incident at the end of May, 2008, until he had surgery on his neck in March, 2009. Davitashvili's complaints initially centered on headaches, earaches and jaw pain on the left side of his head. The medical professionals treated his symptoms. They treated his ear for infection and checked for and treated suspected TMJ (temporomandibular joint) syndrome. At least part of his ear trouble was caused by diagnosed folliculitis, and inflamation of the hair follicles. The records show two isolated complaints of numbness in August, 2008. The next complaint of numbness was not made until January, 2009, and then to another doctor. Davitashvili was diagnosed in early 2009 as having cervical stenosis with cervical myelopathy. On March 26, 2009,

Davitashvili underwent a multiple level spinal fusion between C-4 and C-7 because of the stenosis, multiple bulging discs and multi-level osteophytes. He does have residual problems in his left arm with some numbness, hyperreflexia and a slight decrease in strength.

The medical records also show that Davitashvili was a frequently uncooperative and non-compliant patient whose behavior hampered and delayed the care he received. The records are replete with reports of symptoms and medical response to those symptoms. Attached hereto as "Appendix A" is a synopsis of the medical records showing Davitashvili's complaints and the response by medical staff including Johnson to those complaints from the time of the incident through his neck surgery on March 26, 2009.

On the above set forth record of care and consistent response to reported symptoms, any remaining disputes of fact are not material. The record will not support a finding that this inmate's serious medical needs have been met with deliberate indifference by Dr. Johnson or the other providers. The undersigned recommends that Dr. Johnson's motion for summary judgment be granted and the complaint dismissed against him with prejudice.

Additionally, The Fifth Circuit Court of Appeals has held that a district court may grant summary judgment *sua sponte* provided that the losing party is afforded proper notice and an opportunity to submit documents opposing summary judgment. *See Judwin Properties, Inc. v. U. S. Fire Insurance Co.*, 973 F.2d 432, 436 (5th Cir. 1992). By this report and recommendation, the undersigned recommends that this court grant summary judgment *sua sponte* against the plaintiff and in favor of the defendant, Dorothy Strong, R.N., and dismiss the complaint as to her with prejudice. Plaintiff is advised that this report and recommendation is the notice required under *Judwin*.

The parties are referred to 28 U.S.C. § 636(b)(1) and Local Rule 72(a)(3) for the appropriate procedure in the event any party desires to file objections to these findings and recommendations. Objections are required to be in writing and must be filed within fourteen days of this date. Failure to file written objections to the proposed finding and recommendations contained in this report within fourteen days from the date of filing will bar an aggrieved party from challenging on appeal both the proposed factual findings and the proposed legal conclusions accepted by the district court *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Plaintiff is directed to acknowledge receipt of this report and recommendation by signing the enclosed acknowledgment form and returning it to the court within fourteen days of this date. Plaintiff is warned that failure to comply with the requirements of this paragraph may lead to the dismissal of this lawsuit under F.R.Civ.P. 41(b) for failure to prosecute and for failure to comply with an order of the court.

This the 3rd day of May, 2010.

/s/ JERRY A. DAVIS
UNITED STATES MAGISTRATE JUDGE

# APPENDIX A
## SYNOPSIS OF MEDICAL RECORDS

| Date | Notes |
|---|---|
| 6/3/2008 | Given twenty 200 mg Ibuprofen by R.N to be taken as needed. |
| 6/23/2008 | Seen by Dr. Schafer with complaints of pain in left shoulder, eye and ear. Schafer suspected TMJ syndrome. Prescribed thirty units 500 mg of methocarbomal, a muscle relaxant, to be taken three times a day. Followup appointment in two weeks. |
| 7/5/2008 | Observed by RNs secondary to hunger strike. Four separate notes by RNs with no noted complaints of pain. |
| 7/6/2008 | Observed by nurses due to hunger strike. No complaints of pain noted. |
| 7/7/2008 | Three notes by RN during hunger strike observation, with no complaints of pain noted. |
| 7/7/2008 | Seen by Dr. Schafer. Because of drainage and suspicion of a eustachian tube problem Sudogest, a pseudoephedrine product, was prescribed. |
| 7/9/2008 | Seen by RN with complaints about kosher diet. No noted physical complaints. |
| 7/10/2008 | First post-incident visit with Johnson. Scheduled to be seen for toe-nail clipping, but also complained of headaches, and left eye and ear pain. Johnson found redness in the ear canal and signs of infection in the left eye. Prescribed Neosporin eye drops, Percogesic for pain, and Cortisporin ear drops. |
| 7/18/2008 | Seen by Dr. Schafer for toe nail clipping, but complained of TMJ pain. Schafer ordered an x-ray. |
| 7/22/2008 | Seen by Johnson. Complained of headaches, ear pain and improved but not resolved eye problems. The headaches are noted to be worse on the left side. Johnson examined his eyes for papilledema, hemorrhages or exudates. Papilledema is swelling of the optic nerve disk, a sign of increased intracranial pressure. Exudates are symptomatic of inflammation. |
| 8/5/2008 | Seen by Johnson again. Complained about left sided headache, left sided pain and "numb there," a comment Johnson apparently did not completely understand as he noted the plaintiff's heavy accent. It is noted that the plaintiff was already receiving Percogesic for pain. The ear was noted to be very tender, and the tympanic membrane not visible because the ear canal was full of detritus. Johnson ordered an ENT consult and prescribed Predisone, antibiotic ear drops, and a prednisone injection ordered. |
| 8/20/2008 | Two notes by RN due to medical monitoring of hunger strike. |
| 9/2/2008 | RN monitoring done. |
| 9/5/2008 | Seen by Dr. Schafer in followup to ENT visit. Noted to be on prednisone taper pak. Said he was still having headaches. Seen in showers in no apparent distress. |
| 9/10/2008 | RN noted he is received after off-site medical with ENT. |
| 9/22/2008 | Seen by Dr. Schafer with decreased pain in left ear, with the pain corresponding to movement in the jaw. Still having headaches. Noted to have had TMJ shot from ENT. Skull x-rays are reviewed. Planned for patient to complete taper pack and consider other options if the pain is not resolved. |
| 10/8/2008 | Seen by nurse practitioner. The history noted an alleged beating by staff, blurry vision, sharp left side pain in the head, and inner ear pain. Urgent followup with the |

| | |
|---|---|
| | ENT recommended. Normal x-ray findings discussed and plaintiff instructed to return to clinic if symptoms worsen or in one month. |
| 10/21/08 | Scheduled to be seen by Dr. Ivens after call from ENT. Plaintiff's family had contacted ENT. Inmate refused to stay in medical to be seen. |
| 10/22/08 | An RN noted plaintiff has again refused to see Dr. Ivens. |
| 11/4/08 | Seen by a nurse practitioner with complaint of left ear discomfort and pain on swallowing. His ibuprofen was discontinued and he was given Percogesic for pain. Urgent referral made to the ENT. |
| 11/25/08 | Seen by nurse practitioner about concerns about offsite visit due to ear pain. Given Percogesic and advised he would soon see the ENT. |
| 12/1/2008 | Seen by RN before and after offsite visit with ENT. |
| 12/4/2008 | Seen by nurse practitioner. Ear pain better. ENT believes ear pain is related to TMJ. Percogesic pain medications continued. |
| 12/16/2008 | RN made progress note that he had seen ENT that day and reported he was ok and wanted to return to housing. |
| 12/18/2008 | Seen by Dr. Pour for left ear pain, TMJ pain. He denied any other problems. Treated with Keflex and Prednisone. |
| 1/8/2009 | Seen by Dr. Pour. In addition to jaw and left ear pain, plaintiff complained he had numbness in his left arm. The neurological exam showed normal strength and no focal deficit. The doctor ordered cervical spine films and recommended a neurological assessment if unable to determine cause of plaintiff's chronic problem. |
| 2/2/2009 | Seen by Dr. Pour. Normal C-spine and TMJ films. Complained of some pain in the ear but mainly concerned about numbness in the left arm. It was noted that the ear problem has been diagnosed as folliculitis, an infection of hair follicles. The plaintiff said he had, had the parathesias for six months. The doctor recommended a cervical MRI. Ibuprofen was discontinued and Naprosyn 500 mg twice a day given. |
| 2/3/2009 | RN noted that medications are as ordered per the doctor. |
| 2/10/2009 | An RN notes that he was returning from offsite visit to Bolivar Medical Center where a cervical MRI was performed. |
| 2/17/2009 | Plaintiff refused to stay for appointment with dentist and Dr. Pour because the facility was on lockdown because handcuffs were too uncomfortable. |
| 3/3/2009 | Per RN arrived back at facility after offsite. |
| 3/9/2009 | Dr. Pour reports that the plaintiff refused to come to medical for followup on offsite visit, noting report showed he needed surgery. |
| 3/13/2009 | The plaintiff saw Dr. Pour and agreed to surgery for multiple level disk protrusions with spinal stenosis of the cervical spine. |
| 3/26/2009 | Offsite surgery. Anterior cervical diskectomy, fusion and plating from C-4 through C-7. Found to have fairly severe stenosis, or narrowing of the spinal canal particularly at C3-4. Severe degenerative changes noted at C6-7 and to a lesser extent at C5-6. There was diffuse osteophyte (bone spur) formation which was most prominent in the lower cervical spine. |